IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOARD OF TRUSTEES OF THE            )
CHICAGO PAINTERS AND                )
DECORATORS PENSION FUND,            )
                                    )
                 Plaintiffs,        )
                                    )        Case No. 17 C 2658
v.                                  )
                                    )        Honorable John J. Tharp, Jr.
ROGER GOSSETT and                   )
CINDY K. GOSSETT,                   )
                                    )
                 Defendants.        )

## MOTION FOR DEFAULT JUDGMENT AGAINST
## DEFENDANT, CINDY K. GOSSETT

NOW COME the Plaintiffs, BOARD OF TRUSTEES OF THE CHICAGO

PAINTERS AND DECORATORS PENSION FUND, by and through their attorney,

STEVEN F. McDOWELL, ARNOLD AND KADJAN, LLP, and pursuant to FRCP 55

move for entry of a final judgment of default against Defendant, Cindy K. Gossett, in this

matter. In support of their Motion, Plaintiffs state as follows:

1.      Plaintiffs filed an interpleader complaint on April 7, 2017, against

Defendants, ROGER GOSSETT and CINDY K. GOSSETT with respect to each

Defendant's competing claim for the portion of ROGER GOSSETT"S pension from the

Chicago Painters and Decorators Pension Fund that was awarded to CINDY K. GOSSETT

in a Qualified Domestic Relations Order entered in the District Court of Harris County,

Texas, 246th Judicial District on or about July 3, 2007.

2.      Service upon Defendant, CINDY K. GOSSETT was made on May 18,

2017, and a copy of the proof of service was filed with the court on June 22, 2017.

3. Defendant, CINDY K. GOSSETT, was required to answer the interpleader complaint on or before June 8, 2017. Defendant, CINDY K. GOSSETT, has neither answered nor appeared in this proceeding. While Defendant, CINDY K. GOSSETT, sent correspondence to the attention of the Court and a different set of correspondence to the attention of counsel for Plaintiffs, both of which were filed with this Court as Exhibits to the Initial Status Report and Supplement to the Initial Status Report, neither constituted an answer or appearance in this matter.

4. Courts have held that where a named interpleader defendant, such as CINDY K. GOSSETT, fails to answer the interpleader complaint, a default judgment may be entered against her. For example, in Trustees of the ILWU--PMA Pension Plan v. Coates, No. C-11-3998 EMC, Docket No. 67, 2013 WL 556800 at *4-*7 (N.D. Cal. Feb. 12, 2013) (Exhibit 1); the Court entered a default judgment against an interpleader defendant who had claimed an interest in a pension benefit but failed to answer the interpleader complaint that had been filed to determine the interests of parties in that pension benefit. Default judgments have also been granted against interpleader defendants who failed to answer the interpleader complaint in life insurance cases. See Metropolitan Life Insurance Co. v. London, No. 2:12;CV-1067-WKW, 2013 WL 2181295 at *1 (M.D. Ala. May 20, 2013) (Exhibit 2); Sun Life Assurance Co. of Canada v. Conroy, 431 F. Supp. 2d 220, 226-227 (D.R.I. 2006) (Exhibit 3). See also 7 Wright & Miller, Federal Practice & Procedure Civil § 1714 n.19 (Exhibit 4). If a default judgment is entered the "named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted," Sun Life,

431 F. Supp. 2d at 226, and the Court will award the entire proceeds to the sole remaining interpleader defendant. Sun Life, 431 F. Supp. 2d at 226-227. In this case, if a default judgment is entered against Defendant, Cindy K. Gossett, the entire pension would be awarded to the sole remaining Defendant, Roger Gossett.

5. If a default judgment is entered against an interpleader defendant, it is also appropriate to enter an order enjoining the defaulting interpleader defendant from bringing further litigation over the benefits which were the subject matter of the interpleader dispute. See Trustees of the ILWU-PMA Pension Plan, 2013 WL 556800 at *7-8 (injunction entered against defaulting interpleader defendant barring her from bringing any action in state or federal court against the pension plan over the pension benefits that were the subject of the interpleader action).

WHEREFORE, Plaintiffs pray that:

1. Defendant, CINDY K. GOSSETT, be found in default in this matter.

2. Judgment be entered against Defendant, CINDY K. GOSSETT, and in favor of Plaintiffs, BOARD OF TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION FUND, ordering that the entire pension benefit be paid to Defendant, ROGER GOSSETT, and enjoining Defendant, CINDY K. GOSSETT from bringing any action in state or federal court against Plaintiffs, BOARD OF TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION FUND or the Chicago Painters and Decorators Pension Fund that they administer, with respect to the pension

benefits that were the subject of this interpleader action.

TRUSTEES OF THE CHICAGO PAINTERS AND
DECORATORS PENSION FUND

**s/Steven F. McDowell**
ARNOLD AND KADJAN, LLP
35 East Wacker Drive, Suite 600
Chicago, IL 60604
Telephone No.: (312) 236-0415
Facsimile No.: (312) 341-0438
Dated: June 28, 2017

**EXHIBIT 1**

2013 WL 556800
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

TRUSTEES OF the ILWU–PMA PENSION PLAN,
Plaintiffs,
v.
Pamela COATES, et al., Defendants.

No. C–11–3998 EMC.
|
Docket No. 67.
|
Feb. 12, 2013.

**Attorneys and Law Firms**

Christine S. Hwang, Lindsay Rose Nicholas, Leonard
Carder, LLP, San Francisco, CA, D. Ward Kallstrom,
Kathleen Cahill Slaught, Michelle Marie Scannell,
Seyfarth Shaw LLP, San Francisco, CA, for Plaintiffs.

Brian Leroy Larsen, Lauren Beth Gelber, Law Office
Brian L. Larsen, San Francisco, CA, for Defendants.

ORDER GRANTING PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT

EDWARD M. CHEN, District Judge.

### I. INTRODUCTION

*1 Plaintiffs the Trustees of the ILWU–PMA[1] Pension
Plan ("the Trustees") have brought an interpleader action
under Fed.R.Civ.P. 22 to resolve conflicting claims to
decedent James A. Taylor's ILWU–PMA Pension Plan
Survivor Pension benefits ("the Benefits"). *See* Complaint
in Interpleader (Docket No. 1). In the instant Motion for
Default Judgment (Docket No. 67), the Trustees apply to
this Court for an order entering default judgment against
Defendant Mary Taylor based on her failure to appear or
otherwise respond to Plaintiffs' complaint within the time
prescribed by the Federal Rules of Civil Procedure. The
Trustees also request that this Court enjoin the Defendant

from initiating any further legal action regarding her
entitlement to the Benefits. Having considered Plaintiffs'
briefs and accompanying submissions, as well as the oral
argument of counsel, the Court hereby **GRANTS**
Plaintiffs' motion for the reasons discussed herein.

### II. FACTUAL BACKGROUND

The Trustees are the named fiduciaries and designated
administrators of the ILWU–PMA Pension Plan ("the
Plan"), an employee benefit plan governed by the
Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. §§ 1001, *et. seq.* Compl. ¶¶ 3–4.
Decedent James A. Taylor was a Plan participant who
began receiving monthly benefits from the Plan when he
retired on November 1, 2003, until his death on
November 15, 2009. *Id.* ¶¶ 6, 29. The Plan provides that
upon the death of a plan participant, the "surviving spouse
[as defined by the Plan] will receive a monthly Survivor
Pension benefit for the remainder of the surviving
spouse's life." *Id.* ¶ 37. At the time this suit was filed, the
amount of plan benefits payable to the surviving spouse
equaled $2,299.27 per month. *Id.* ¶ 39.

Plaintiffs' complaint does not indicate that the pension
plan documents record the identity of the decedent's
spouse. However, records associated with a separate
employee benefit plan sponsored by the ILWU and PMA
do. Mr. Taylor was also a participant in the ILWU–PMA
Welfare Plan ("Welfare Plan"), "a separate ERISA plan
providing hospital, medical, and other benefits to
longshore workers and their dependents." Comp. ¶ 14.
"Under the Welfare Plan, longshore workers designate
their dependants, including dependent spouses, as eligible
for Welfare Plan coverage by submitting a 'Record
Change Form' or a 'Dependent Verification Form.' " *Id.* ¶
15. Plaintiffs, through the ILWU–PMA Benefit Plan
Office, received a total of 11 such forms from the
decedent over the course of his participation in the two
plans. *See id.* ¶¶ 13–30. These forms identify five separate
individuals as the decedent's spouse. Plaintiffs have
named each of these five individuals as a defendant in this
action "on information and belief that [each] may have an
interest in the benefits at issue." *Id.* ¶¶ 9–11.

Defendant Laversa Pier, a resident of San Francisco,
California, was married to James Taylor from October 11,
1980, until the dissolution of their marriage on a date
before November 12, 1982. Compl. ¶ 9. Defendant
Jennifer Taylor, a resident of Brentwood, California, was
married to James Taylor on October 10, 1982. *Id.* ¶ 7.

Jennifer Taylor was deleted as a dependent spouse by the decedent on a Record Change Form filed on January 18, 1984. *Id.* ¶ 21. Defendant Mary Taylor, whose residence is unknown, was married to James Taylor around January 1984 until the dissolution of their marriage around February 1985. *Id.* ¶ 10. Defendant Sheryl Perdue, a resident of Lithonia, Georgia, was married to James Taylor from November 30, 1985, until the dissolution of their marriage on October 31, 1989. *Id.* ¶ 11. Defendant Pamela Coates, a resident of San Francisco, California, married James Taylor on August 6, 1999. *Id.* ¶ 8. At the time of his retirement, James Taylor indicated to the ILWU–PMA Benefit Plan Office that Pamela Coates was his legal spouse. *Id.* ¶ 29. On February 4, 2009, Mr. Taylor filed a "Dependent Verification Form" deleting Pamela Coates as a dependent spouse, and when he died later that year, Mr. Taylor's death certificate stated that his marital status was "widowed." *Id.* ¶¶ 30–31.

**\*2** In January 2010, approximately two months after the decedent's death, Pamela Coates and Jennifer Taylor each submitted an "Application for Survivor Pension" on account of their marriage to James Taylor. Compl. ¶¶ 32–33. At the request of the ILWU–PMA Benefit Plan Office, both defendants separately submitted copies of their marriage certificates and letters from California Superior Courts for the Counties of Alameda, San Francisco, and Contra Costa, stating that no record of the dissolution of either of their marriages exists. *Id.* ¶¶ 34–36. "Because of the conflicting information regarding the overlapping dates of marriage between James A. Taylor and the five Defendants," Plaintiffs state they "cannot determine whether and to what extent Defendants" are entitled to Mr. Taylor's Survivor Pension benefits. *Id.* ¶ 38.

### III. *PROCEDURAL BACKGROUND*

In an effort to resolve these conflicting claims to the Benefits, the Trustees filed this interpleader[2] action under Fed.R.Civ.P. 22, naming James Taylor's alleged spouses and former spouses as defendants. Compl. at 2. As a general rule, after properly effecting service of process in an interpleader action, "[a] named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted." *Sun Life Assur. Co. of Canada, (U.S.) v. Conroy*, 431 F.Supp.2d 220, 226 (D.R.I.2006). Pamela Coates was served with a summons and copy of the complaint on September 6, 2011, and filed a timely answer to the complaint on September 30, 2011. *See* Docket Nos. 9, 10. Of the five defendants, Ms.

Coates is the only one who has answered Plaintiffs' interpleader action.

Jennifer Taylor was served on August 29, 2011. *See* Docket No. 11. The Trustees allege that a person representing herself as Jennifer Taylor had a telephone conversation with Plaintiffs' counsel on September 2, 2011, to inquire about the summons and complaint she received. Declaration of Lindsay Nicholas ("Nicholas Decl.") (Docket No. 39) ¶ 6. Laversa Pier was served on September 19, 2011. *See* Docket No. 12. The Trustees allege that Laversa Pier contacted Plaintiffs' counsel on September 20, 2011, to indicate that she had no interest in claiming the Benefits on account of her marriage to James Taylor. Nicholas Decl. ¶ 11. Other than these brief interactions with Plaintiffs' counsel, neither Ms. Pier nor Ms. Taylor filed a response to the complaint or otherwise entered an appearance in this action. The Trustees moved for entry of default against these two defendants, which the Clerk entered on November 17, 2011. *See* Docket No. 19.

After unsuccessful attempts to locate defendants Mary Taylor and Sheryl Perdue via searches of three electronic databases, Plaintiffs moved for permission to serve Mary Taylor and Sheryl Perdue by publication. *See* Pl.'s Motion to Serve by Publication (Docket No. 23). The Court granted the motion, and the Plaintiffs published summons for Mary Taylor in the San Franciscobased publications *The Recorder* and the *San Francisco Chronicle. See* Docket Nos. 26, 29. The Trustees published summons for Sheryl Perdue in the *The Recorder,* the *San Francisco Chronicle,* and the Atlanta-based publication the *Daily Report. See* Docket Nos. 25, 27–28. After Ms. Taylor and Ms. Perdue failed to file a timely answer or otherwise appear, the Clerk entered default against Mary Taylor on June 22, 2012, and against Sheryl Perdue on July 2, 2012. *See* Docket Nos. 46, 49.

**\*3** The Plaintiffs thereafter filed a Motion for Default Judgment against all four defendants on the grounds that none of them had timely filed an answer or otherwise appeared in this action. *See* Docket No. 37. Magistrate Judge Cousins heard the motion and filed a report and recommendation in favor of entering default judgment against all four defendants. *See* Docket No. 50. This Court adopted in part Judge Cousins' report and recommendation, and granted Plaintiffs' motion against Jennifer Taylor, Laversa Pier, and Sheryl Perdue, enjoining them from "pursuing further action in state or federal court regarding any claim to the benefits at issue." Order Adopting in Part Report and Recommendation ("Order") (Docket No. 56) at 1. As to Defendant Mary Taylor, however, the Court voiced "concerns that a

default judgment against her may be premature." *Id.* Plaintiffs' database searches for Mary Taylor identified "hundreds of individuals with this name, none of whom have a birth date that matches the Welfare Plan's records." Pl.'s Motion to Serve by Publication at 3. The Court reasoned that, since the "complaint does not allege Mary Taylor resides in the San Francisco Bay Area," nationwide publication "would be more reasonably calculated to reach Ms. Taylor." Order at 2. It, therefore, denied Plaintiffs' motion for entry of default judgment, but granted "leave of the Court to publish summons as to Mary Taylor via a nationwide publication and, assuming she makes no appearance thereafter, seek a default judgment." *Id.*

Following the Court's ruling, the Plaintiffs published summons for Mary Taylor in the Washington, D.C.-based publication *The Washington Post. See* Docket No. 63. After Mary Taylor failed to file a timely answer or otherwise appear, the Clerk entered default against her on December 20, 2012. *See* Docket No. 66. The Plaintiffs thereafter brought their instant motion for entry of default judgment against Mary Taylor. Docket No. 67. The Court held a hearing on Plaintiffs' motion on February 7, 2013, at which Defendant Mary Taylor failed to appear.

## IV. *DISCUSSION*

### A. *Jurisdiction*
In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the subject matter and the parties to the case. *See In re Tuli,* 172 F.3d 707, 712 (9th Cir.1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

### 1. *Subject Matter Jurisdiction*
This Court has subject matter jurisdiction in this ERISA case under 29 U.S.C. § 1132(e)(1).[3] ERISA permits fiduciaries and plan administrators to obtain equitable relief to enforce any provisions of the terms of an ERISA-governed plan. *See* 29 U.S.C. § 1132(a)(3). The Ninth Circuit has held that such "equitable relief" includes interpleader actions that seek to determine the rightful beneficiaries to the proceeds of an ERISA covered plan in the face of multiple conflicting claimants. *Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030, 1034 (9th Cir.2000).

### 2. *Personal Jurisdiction*
*4 To enter default judgment, the Court must also have a basis for the exercise of personal jurisdiction over the defaulting defendant. *See Tuli,* 172 F.3d at 712 ("A judgment entered without personal jurisdiction over the parties is void."). Under ERISA, fiduciaries may bring an enforcement action in the federal district court of any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Under this nationwide service of process provision, a court may exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *Vivien v. Worldcom, Inc.,* No. 02–cv–01329 WHA, 2002 WL 31640557, at *2 (N.D.Cal. July 26, 2002); *see also Denny's, Inc. v. Cake,* 364 F.3d 521, 524 (4th Cir.2004) (holding that a federal district court in South Carolina could exercise personal jurisdiction over the California Labor Commissioner because the ERISA plan was administered in South Carolina, the Commissioner had been served in California, and the action was a proper ERISA enforcement action).

In this case, the Plaintiffs have brought an ERISA enforcement action under 29 U.S.C. § 1132(a)(3) in an effort to "enforce the terms of the Pension Plan," that is, to determine "to whom the Survivor Pension benefits payable on account of James A. Taylor ... are to be paid." Compl. at 2. The complaint does not allege Mary Taylor's state of residence, but under ERISA's nationwide service of process provision, this Court may exercise personal jurisdiction over her even if she does not reside in this judicial district. *See Vivien,* 2002 WL 31640557 at *2. Mary Taylor presumably falls within ERISA's nationwide service of process provision as long as she is a resident of the United States. *See Combs v. Doe,* No. 10–cv–01120 HRL, 2011 WL 738052, at *2 (N.D.Cal. Feb.23, 2011) (recommending that default judgment be entered against a defendant whose identity and location are unknown). The Court has been given no reason to believe that she is not. Thus, the Court has a basis for exercising personal jurisdiction over Mary Taylor in order to grant default judgment against her.

### B. *Default Judgment*

#### 1. *Adequacy of Service of Process*
As a threshold matter in considering a motion for default

judgment, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters,* No. C–00–0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D.Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that "an individual ... may be served in a judicial district of the United States by ... following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located...." California law allows for service by publication if the party to be served "cannot with reasonable diligence be served in another manner," and is a "necessary or proper party to the action" or "has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action. Cal.Code Civ. Pro. § 415.50(a). In order to effectuate service by publication, a party must publish the summons "in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." Cal.Code Civ. Pro. § 415.50(b). "If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party." *Id.* California law also specifies that service by publication will be satisfied on the twenty-eighth day following the first date of publication, with the summons being published at least once a week for four consecutive weeks, with at least five days intervening between the publication dates. *See* California Government Code § 6064.

*5 Here, the Plaintiffs have satisfied all requirements for effectuating service on Defendant Mary Taylor by publication. After unsuccessful attempts to locate Mary Taylor via searches of three electronic databases, Plaintiffs published summons for her in *The Recorder* and the *San Francisco Chronicle. See* Docket Nos. 26, 29. Following this Court's Order denying Plaintiffs' motion for entry of default judgment, and in an effort to effectuate service on the Defendant by national publication, Plaintiffs published summons for Mary Taylor in *The Washington Post. See* Docket Nos. 62, 63. Plaintiffs' declaration accompanying the instant motion (Declaration of Lindsay Nicholas, Docket No. 69), and their Proof of Publication (Docket No. 63), reflect that they have satisfied the requirements of California Government Code § 6064. Through national publication of the summons, Plaintiffs have discharged their duty to exercise "reasonable diligence" in effecting alternate service in a manner most likely to give actual notice to Mary Taylor of this action, as required by Cal.Code Civ. Pro. § 415.50. Thus, the record contains sufficient evidence to conclude that Mary Taylor has been properly

served and noticed of this action as required by Fed. R. Civ. P 4 and the California Code of Civil Procedure.

### 2. Merits of Motion for Default Judgment

After the entry of default, a court may grant default judgment on the merits of a case. *See* Fed.R.Civ.P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986). Because default has already been entered in this case, the Court must construe as true all factual allegations in Plaintiffs' complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987). *See also Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir.1977) (holding that at the default judgment stage, the factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties). Facts not contained in the pleadings and claims which are legally insufficient, however, are not established by default. *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978).

The Court finds that all seven *Eitel* factors weigh in favor of granting default judgment against Mary Taylor. First, the Plaintiffs would suffer prejudice if the Court does not enter default judgment against this Defendant because they would be denied the finality of judgment sought through their interpleader action. *See Trustees of IL WU–PMA Pension Plan v. Peters,* 660 F.Supp.2d at 1144 (finding prejudice "if default judgment were not granted because [the ERISA plan fiduciaries] would be denied the certainty and finality that judgment in an interpleader action is intended to provide."); *see also W. Reserve Life Assurance Co. of Ohio v. Canul,* No. 11–cv–01751 AWI, 2012 WL 844589, at *2 (E.D.Cal. Mar.12, 2012), *report*

*and recommendation adopted,* No. 11–cv–01751 AWI, 2012 WL 1074952 (E.D.Cal. Mar.29, 2012) (holding that the plaintiff "would be prejudiced if a default judgment is not granted" because plaintiff "has no other alternative by which to evaluate [d]efendant's claim to the life insurance policy.") (citation omitted); *W. Conference of Teamsters Pension Plan v. Jennings,* No. 10–cv–03629, 2011 WL 2609858, at *3 (N.D.Cal. June, 5, 2011) ("Plaintiff and [answering defendant] would suffer prejudice if the Court does not enter default judgment. The dispute concerns [d]efendants' competing claims to interpleaded funds. Without entry of default judgment, the competing stakeholders' claims cannot be resolved.").

*6 The second and third factors—the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint—also weigh in favor of default judgment. These two factors together require "plaintiffs' allegations [to] state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund,* No. 94–cv–2684 TEH, 1996 WL 75314, at *2 (N.D.Cal. Feb.13, 1996). *See also Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978) ("The issue here is whether the allegations in the complaint are sufficient to state a claim on which the [moving party] may recover."). The primary purposes for an action in interpleader are "(1) to protect the party depositing the funds with the court from secondary, follow-up actions and (2) to protect the resources of the interpleading party." *W. Reserve Life Assur. Co. of Ohio v. Canul,* 2012 WL 844589 at *2. Accepting the Plaintiffs' allegations in the complaint as true, the Court finds that the Trustees have stated a claim upon which they may recover, as resolution of the five Defendants' rights to the plan benefits at issue will protect the Plaintiffs from multiple liability. *See Canul,* 2012 WL 844589 at *2. Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment against Mary Taylor.

The fourth *Eitel* factor, the sum of money at stake in the action, weighs neither for nor against an entry of default judgment. In interpleader actions, the sum of money at stake, however significant, is not dispositive as the interpleading party is not asserting an interest in the interpleaded funds, nor are they seeking damages. *Transamerica Life Ins. Co. v. Estate of Ward,* No. 11–cv–0433 JAM, 2011 WL 5241257, at *4 (E.D.Cal. Oct.31, 2011); *see also Jennings,* 2011 WL 2609858 at *3 (finding that the fourth *Eitel* factor is neutral in an interpleader action). The Plaintiffs in this action are not asserting a claim to the funds, but are attempting to distribute the funds to the party entitled to the plan benefits. There is no dispute that the funds to be deposited and distributed are determined by the Plan.

The fifth and sixth *Eitel* factors recommend that a court consider "the possibility of a dispute concerning material facts" and "whether the default was due to excusable neglect" in assessing whether to grant default judgment. *Eitel v. McCool,* 782 F.2d at 1471–72. The Court finds that both factors weigh in favor of entering default judgment. Mary Taylor has made no effort to challenge the Trustees' interpleader complaint. Therefore, there is nothing on the record before the Court to suggest that a factual dispute exists. *See Transamerica Life Ins. Co.,* 2011 WL 5241257 at *4 (finding that "there is a very low likelihood that any genuine issue of material fact exists" because "the court [assumes] the truth of well-pleaded facts in the complaint following the clerk's entry of default"); *see also Canul,* 2012 WL 844589 at *3 ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case."). Further, considering the merits of this action, it is unlikely that Mary Taylor would assert a competing claim to be designated the decedent's "surviving spouse" under the plan, given that her marriage to Mr. Taylor ended in February 1985, and the decedent twice remarried in the twenty four years before his death. Turning to the sixth factor, the Plaintiffs sought and obtained administrative relief to proceed with substituted service on Mary Taylor. *See* Docket Nos. 23–24, 61–62. The Plaintiffs then effectuated service by publication. *See* Docket Nos. 26, 29, 63. "[I]t is unlikely that [the defendant's] failure to answer, and the resulting defaults entered by the [clerk], were the result of excusable neglect" where "[the plaintiff] effectuated service on [the defendant] via substituted service, which is a method permitted by law." *Canul,* 2012 WL 844589 at *3. Therefore, these two factors also weigh in favor of default judgment.

*7 Finally, while public policy favors decisions on the merits, *see Eitel,* 782 F.2d at 1472, Mary Taylor's failure to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo, Inc. v. California Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002). "Under Fed.R.Civ.P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id.* At any rate, in light of the weight of the above factors in favor of entering default judgment, this last *Eitel* factor is not dispositive. *See Transamerica Life Ins. Co.,* 2011 WL 5241257 at *4 (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment).

In sum, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendant Mary Taylor.

### C. *Injunction Against Defaulting Defendants*

The Plaintiffs' interpleader complaint seeks an "Injunctive Order of this Court" to prevent the named Defendants "from commencing or maintaining any action against the Plaintiffs, the Pension Plan,[ ] ILWU, PMA, or the Plans Office regarding entitlement to the Survivor Pension benefits payable under the Pension Plan on account of James A. Taylor." Compl. at 10. Unlike statutory interpleader, rule interpleader under Fed.R.Civ.P. 22 does not authorize courts to enjoin litigants from pursuing further claims in state or federal court with regard to the res at issue. *See* Fed.R.Civ.P. 65(e) ("These rules do not modify ... 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader."). However, courts have used the All Writs Statute, 28 U.S.C. § 1651, to enjoin defendants in an interpleader action from bringing future proceedings regarding the same claim in federal court. *See New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 879 (5th Cir.1998) ("Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court. Accordingly, a federal court in a Rule 22 interpleader proceeding may issue an injunction to restrain the parties from pursuing such issues in another federal court.") (citations omitted). This is because relitigation of these issues "would be judicially wasteful and raise the possibility of inconsistent results. It would also defeat the purpose of the [plaintiffs'] interpleader action." *Trustees of IL WUPMA Pension Plan v. Peters,* 660 F.Supp.2d at 1145.

Further, courts have held that injunctions issued pursuant to the All Writs Statute may be used to enjoin parties from relitigating the same issues or claims before state courts. Normally, the Anti–Injunction Act, 28 U.S.C. § 2283, "limits the ability of federal courts to enjoin state court proceedings." *Peters,* 660 F.Supp.2d at 1144. However, an exception has been recognized for injunctions that are "necessary in aid of [the court's] jurisdiction, or to protect or effectuate its judgment." *Id.* This exception is referred to as the "relitigation exception." *Id.* (citing *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). *See also Gen. Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 707 (7th Cir.1991) ("A federal court presiding over an interpleader action may stay pending state court proceedings involving the same interpled fund under the 'necessary in aid of its jurisdiction' exception to the Anti–Injunction Act.").

**\*8** To be afforded injunctive relief from relitigation, the party seeking the injunction must prove that it would otherwise suffer irreparable harm. *Peters,* 660 F.Supp.2d at 1144–45 (citing *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). The Court will generally grant such an injunction "where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Id.* (citing *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 721 (5th Cir.1990)). In this action, the Plaintiffs would suffer irreparable harm if faced with future claims to the interpled funds brought by Defendant Mary Taylor after this action has been adjudicated against her. *See id.* at 1145 (finding irreparable harm where relitigation would be "judicially wasteful and raise the possibility of inconsistent results"). The Plaintiff fiduciaries and administrators here are merely disinterested stakeholders seeking to enforce the terms of an ERISA employee benefits plan and distribute the benefits to the appropriate party. As in *Peters,* relitigation would defeat the purpose of Plaintiffs' interpleader action and result in waste. *See id.* at 1145. An injunction here is necessary in order to prevent judicial wastefulness and the "possibility of inconsistent results." *See id.* Thus, the Court finds that Mary Taylor must be enjoined from bringing any further action in state or federal court regarding her claims to the subject benefits on account of James Taylor.

### V. *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for entry of default judgment against Defendant Mary Taylor, and enjoins her from commencing or maintaining any action against the Plaintiffs regarding her entitlement to the Survivor Pension benefits payable under the Pension Plan on account of James A. Taylor.

This order disposes of Docket No. 67.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 556800, 55 Employee Benefits Cas. 1009

**EXHIBIT 2**

2013 WL 2181295
Only the Westlaw citation is currently available.
United States District Court,
M.D. Alabama,
Northern Division.

METROPOLITAN LIFE INSURANCE COMPANY,
Plaintiff,
v.
Victor LONDON, Dora L. Hill, and Signature
Group Financial, LLC, Defendants.

No. 2:12–CV–1067–WKW.
|
May 20, 2013.

**Attorneys and Law Firms**

Ann Todd Taylor, Bradley Arant Boult Cummings LLP, Birmingham, AL, Scott Burnett Smith, Bradley, Arant, Rose & White, Huntsville, AL, for Plaintiff.

Victor London, Montgomery, AL, pro se.

Dora L. Hill, Montgomery, AL, pro se.

Julian Mason Davis, Marcus M. Maples, Sirote & Permutt, P.C., Birmingham, AL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

W. KEITH WATKINS, Chief Judge.

*1 Plaintiff Metropolitan Life Insurance Company ("MetLife") has moved for entry of default judgment against Victor London (Doc. # 17) and to interplead funds into the court and be dismissed (Doc. # 15). Its motions will be granted.

## I. BACKGROUND

MetLife brings an interpleader action naming Dora L. Hill, Victor London, and Signature Group Financial, LLC, as Defendants. Ms. Hill is the named beneficiary of a policy issued under the Federal Employees Group Life Insurance Act ("FEGLIA") payable upon the death of the decedent, Jesse Williams, Sr. MetLife administers FEGLIA policies, which are issued pursuant to federal law. *See* 5 U.S.C. §§ 8701–16. Ms. Hill assigned $7,483 of the total $8,750 in FEGLIA benefits to the funeral home that handled Mr. Williams's arrangements, and the funeral home, in turn, assigned that sum to Signature Group Financial, LLC. Before MetLife could distribute the benefits, it received an undated letter from Mr. London, a relative of Mr. Williams, stating that Ms. Hill "committed identity theft on several" of Mr. Williams's accounts and that Ms. Hill's claim was fraudulent. (Doc. # 1, Ex. E.) MetLife brought its interpleader complaint to avoid exposure to double liability.

The complaint arises under federal law as that term is used in 28 U.S.C. § 1331 because a FEGLIA policy "is not a private contract between the insured and the insurer, but a federal policy administered under federal law." *O'Neal v. Gonzalez,* 839 F.2d 1437, 1440 (11th Cir.1988). There is, therefore, a jurisdictional basis for the claim in federal court, and Rule 22 interpleader is available because MetLife has joined three parties who it believes have "claims that may expose [it] to double or multiple liability." Fed.R.Civ.P. 22(a).

## II. MOTION FOR DEFAULT JUDGMENT

Mr. London, one of the three adverse parties who MetLife believes may subject it to multiple liability, has failed to answer. MetLife moves for a default judgment against him. *See Sun Life Assur. Co. of Canada v. Conroy,* 431 F.Supp.2d 220, 226 (D.R.I.2006) ("A named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted."). MetLife has complied with the procedural requirements for obtaining a default judgment, as it has secured an entry of default from the clerk based upon Defendants' failure to file an answer or otherwise defend this action. (Doc. # 20); *see also* Fed.R.Civ.P. 55(a). Accordingly, MetLife's Motion for Default Judgment (Doc. # 17) is due to be granted.

## III. MOTION TO DISCHARGE LIABILITY

MetLife asserts that the requirements for interpleader have been met, and, therefore, it should be discharged from further liability. (Docs.# 1, 15.) It represents that the

Defendants who have appeared, Ms. Hill and Signature Group Financial, consent to MetLife's discharge from the case. MetLife has disavowed all interest in the *res* and asks the court to enjoin all Defendants from instituting any action or proceeding in any court against MetLife for the recovery of the *res*. *Kurland v. United States,* 919 F.Supp. 419, 422 (M.D.Fla.1996) ("Interpleader gives the disinterested party the ability to bow out, leaving the actual parties with real interests at stake to litigate their claims."). Further, MetLife has waived its complaint request for attorneys' fees and costs. In light of the default judgment against Mr. London, the remaining Defendants' consent, and MetLife's imminent satisfaction of the requirements of interpleader, it is entitled to the relief it seeks.

## IV. CONCLUSION

*2 It is ORDERED that Plaintiff's Motion for Default Judgment (Doc. # 17) is GRANTED.

It is further ORDERED that Plaintiff's Motion to Pay Funds into the Court and for Order of Dismissal (Doc. # 15) is GRANTED in part. No later than **June 17, 2013,** MetLife shall pay into the registry of the court the FEGLI Benefits, plus any applicable interest. Upon such payment, the court will dismiss MetLife with prejudice, discharge it from further liability, and enter an appropriate injunction.

At that time, Ms. Hill and Signature Group Financial will be required to litigate or settle and adjust between them their claims for the FEGLI benefits. If, as it appears, they are in agreement, they should file a notice reflecting such agreement and informing the court how they wish it to direct the *res* no later than **June 17, 2013.** *Cf. Valley Forge Life Ins. Co. v. Rockmore,* 7:07–CV–0063(HL), 2008 WL 1805450, at * 1 (M.D.Ga. Apr. 18, 2008) (finding that if "all but one named interpleader defendant has defaulted, the remaining defendant is entitled to the *res* ").

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2181295

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 3**

431 F.Supp.2d 220
United States District Court,
D. Rhode Island.

SUN LIFE ASSURANCE COMPANY OF CANADA,
(U.S.),

v.

Ida CONROY, Paul S. Davenport, Paul Gonya,
Carol Kimberly Griggs a/k/a Carol Kimberly,
Jeffrey Luiz, H. Locke Macdonald, A. Michael
Marino, Robert R. Nadeau, Anthony J. Robbio,
Jr., and Frederick Von Fredrek,

No. C.A. 05–172S.
|
April 21, 2006.

**Synopsis**
**Background:** Life insurance company filed interpleader
action against multiple defendants to determine which
defendants were the beneficiaries of multiple annuity
contracts and how to distribute proceeds. One defendant
moved for default judgment.

**Holdings:** The District Court, Smith, J., adopted the
report and recommendation of Martin, United States
Magistrate Judge, which held that:

[1] court had subject matter jurisdiction;

[2] court had personal jurisdiction over defaulted
defendants; and

[3] moving defendant was entitled to default judgment.

Motion granted.

West Headnotes (7)

[1]     **Federal Courts**
        Necessity of Objection; Power and Duty of
        Court
        **Federal Courts**
        Sua sponte determination
        **Federal Courts**

Sua sponte determination

When judgment is sought against a party who
has failed to plead or otherwise defend, a district
court has an affirmative duty to assure itself that
it has jurisdiction over both the subject matter
and the parties.

1 Cases that cite this headnote

[2]     **Federal Courts**
        Interpleader

The requisite diversity exists for an interpleader
action if at least two of the adverse claimants are
citizens of different states, without regard to the
citizenship of other claimants or the stakeholder.
28 U.S.C.A. §§ 1332, 1335.

1 Cases that cite this headnote

[3]     **Federal Courts**
        Interpleader

Defendants had sufficient diversity of
citizenship to confer upon district court subject
matter jurisdiction over interpleader action
brought by insurance company to determine
which defendants were entitled to the proceeds
of annuity contracts, where one defendant was a
resident of Florida, one was a resident of
California, and the other eight defendants were
residents of Rhode Island. 28 U.S.C.A. §§ 1332,
1335, 1397, 2361; Fed.Rules Civ.Proc.Rule 22,
28 U.S.C.A.

Cases that cite this headnote

[4]     **Interpleader**
        Process and appearance

District court had personal jurisdiction over

defaulted defendants in interpleader action brought by insurance company to determine which defendants were entitled to the proceeds of annuity contracts, where six of the defaulted defendants signed a waiver of service of process, and the seventh defaulted defendant was personally served with summons and complaint. 28 U.S.C.A. §§ 1397, 2361.

3 Cases that cite this headnote

[5] **Interpleader**
⬅Judgment or decree, and enforcement thereof

While more frequently it is the plaintiff who moves for entry of default judgment, the right of a defendant in an interpleader action to do so is recognized.

9 Cases that cite this headnote

[6] **Interpleader**
⬅Judgment or decree, and enforcement thereof

Interpleader defendant who moved for default was entitled to default judgment in interpleader action brought by insurance company to determine which defendants were entitled to the proceeds of annuity contracts, where defendant had resolved her conflict by stipulation with the other two defendants who had filed timely answers to the interpleader complaint, and the remaining seven defendants failed to respond to the complaint.

23 Cases that cite this headnote

[7] **Interpleader**
⬅Relief awarded

A named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement

that might have been asserted.

21 Cases that cite this headnote

**Attorneys and Law Firms**

*221 Joan O. Vorster, Mirick, O'Connell, Demallie & Lougee, LLP, Worcester, MA, Richard F. Kirby, Mactaz, Keefer, & Kirby, Providence, RI, for Plaintiff.

Avram N. Cohen, Law Office of Avram N. Cohen, Stephen J. Angell, Law Office of Stephen J. Angell, Providence, RI, Edward L. Gerstein, Esq., Little Compton, RI, Edward R. Dipippo, Cranston, RI, for Defendants.

## ORDER

SMITH, District Judge.

The Report and Recommendation of United States Magistrate Judge David L. Martin filed on March 16, 2006, in the above-captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1). Defendant, Carol Kimberly Griggs' Motion for Entry of Default Judgment against Defendants Nadeau, Gonya, Marino, Robbio, Davenport, Von Fredrek and Luiz is GRANTED.

## *222 REPORT AND RECOMMENDATION

MARTIN, United States Magistrate Judge.

Before the Court is Defendant Carol Kimberly Griggs' Motion for Entry of Default Judgments against Defendants Nadeau, Gonya, Marino, Robbio, Davenport, Von Fredrek[1] and Luiz (Document ("Doc.") # 67) ("Motion for Entry of Default Judgment" or "Motion") pursuant to Fed.R.Civ.P. 55(b)(2). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The Court has determined that no hearing is necessary. For the reasons stated below, I recommend that

the Motion be granted.

## I. Facts[2] and Travel

This is an interpleader action. *See* Complaint for Interpleader (Doc. # 1) ("Complaint") ¶ 1. Plaintiff Sun Life Assurance Company of Canada, U.S. ("Plaintiff" or "Sun Life"), is a stock life insurance company with a principal place of business in Wellesley Hills, Massachusetts. *Id.* ¶ 3. In 1984 and 1985 Sun Life issued a total of seven annuity contracts (the "Contracts") to Frederick A. Gonya ("Frederick"). The Contracts bear the following numbers: 08–0880–138224 ("Contract 224"), 08–0880–138233 ("Contract 233"), 08–0880–145038 ("Contract 038"), 08–0880–145056 ("Contract 056"), 08–0880–145065 ("Contract 065"), 08–0880–145074 ("Contract 074"), and 71–7100–001929 ("Contract 929"). *Id.* At various times prior to his death on September 6, 1999, Frederick designated one or more of the named Defendants as beneficiaries of one or more of the Contracts. *Id.* ¶¶ 15–16.

Sun Life filed this action on April 25, 2005, *see* Docket, alleging that "a dispute exists among the defendants regarding who are the beneficiaries under the Contracts and how the proceeds from the Contracts should be distributed among them," Complaint ¶ 19. The Complaint named ten individuals as Defendants: Ida Conroy ("Conroy"), Paul S. Davenport ("Davenport"), Paul Gonya ("Gonya"), Carol Kimberly Griggs, a.k.a. Carol Kimberly ("Griggs"), Jeffrey Luiz ("Luiz"), H. Locke MacDonald ("MacDonald"), A. Michael Marino ("Marino"), Robert R. Nadeau ("Nadeau"), Anthony J. Robbio, Jr. ("Robbio"), and Frederick Von Fredrek ("Von Fredrek"). Complaint at 1.

According to the Complaint, Frederick allegedly designated Griggs as the beneficiary *223 of six of the Contracts on August 19, 1999, *see* Complaint ¶¶ 22, 30, 34, 39, 43, 48, and, upon information and belief, Griggs claimed to be the beneficiary of Contract 233, *id.* ¶ 26. The Complaint further alleges that "Griggs contends that the proceeds from the Contracts should be distributed directly to her," *id.* ¶ 19, but six Defendants, Davenport, Gonya, Marino, Nadeau, Robbio, and Von Fredrek, objected to such distribution, *see id.* Each of the six, "[u]pon information and belief," *id.* ¶¶ 23, 27, 31, 35, 40, 44, 49, disputed Griggs' claim to the proceeds of one of the Contracts, *see id.*[3]

Only three Defendants, Conroy, MacDonald, and Griggs, responded to the Complaint by filing timely answers. *See* Docs. # 3, # 15, # 16; *see also* Docket. The remaining seven Defendants, Davenport, Gonya, Luiz, Marino,

Nadeau, Robbio, and Von Fredrek (the "defaulted Defendants"), who are the subjects of the instant Motion for Entry of Default Judgment, did not file timely answers or responses to the Complaint, *see* Docket, and they were defaulted on October 24, 2005, *see* Docs. # 31–37.

Six of the defaulted Defendants (Davenport, Gonya, Marino, Robbio, Nadeau, and Von Fredrek) filed motions on November 16, 2005, to vacate the default and to allow them to answer the Complaint. *See* Docket; *see also* Docs. # 41, # 44, # 47, # 50, # 53, # 56. Luiz had advised Sun Life in a letter dated June 28, 2005, that he did "not object to Sun Life's distribution of the assets according to their records as designated by the owner of the policies, Frederick Gonya, at the time of his passing." Memorandum of Defendant Carol Kimberly Griggs [1] in Support of Motion for Entry of Default Judgments against Defendants Nadeau, Gonya, Marino, Robbio, Davenport, Von Fredrek and Luiz ("Griggs' Mem."), Exhibit ("Ex.") A (Letter from Luiz to Kirby of 6/28/05).

Following a hearing on January 6, 2006, the Court denied the motions to vacate in a memorandum and order issued on January 12, 2006. *See* Memorandum and Order Granting Plaintiff's Motion to Deposit Proceeds and Denying Motions to Vacate Default (Doc. # 61) ("Memorandum and Order of 1/12/06"). In that same memorandum and order, the Court granted Sun Life's motion to deposit the proceeds of five of the Contracts with the Clerk.[4] *See id.* None of the defaulted Defendants objected to, or otherwise sought review of, the Memorandum and Order of 1/12/06 which denied their motions to vacate the defaults. *See* Docket.

The instant Motion for Entry of Default Judgment was filed by Defendant Griggs on February 14, 2005. *See* Docket. By the Motion, Griggs seeks to have default judgment enter against the defaulted Defendants and in her favor concerning five annuity Contracts: 224, 233, 038, 074, and *224 929. *See* Motion at 4. The Motion also recites that Griggs, Conroy, and MacDonald have "settled their differences, if any, concerning Contracts 056 and 065," *id.* at 2, as a result of a stipulation (Doc. # 65) entered by the Court on February 1, 2006, *see id.*

## II. Jurisdiction

[1] As an initial matter, when judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties. *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir.2001); *In re Tuli*, 172 F.3d 707, 712 (9th Cir.1999); *Dennis Garberg*

& Assocs., Inc. v. Pack–Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir.1997); Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir.1986); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir.2002)("To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decision.' ")(quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir.1999)); Letelier v. Republic of Chile, 488 F.Supp. 665, 668 (D.D.C.1980)(holding that issue of subject matter jurisdiction should be fully explored despite previous entry of default); cf. Hugel v. McNell, 886 F.2d 1, 3 n. 3 (1st Cir.1989)("[W]here the court rendering the default judgment is shown to lack personal jurisdiction over the defendant, ... the judgment may be vacated and set aside by the rendering court on motion, or by another court on collateral attack.")(quoting 6 Moore's Federal Practice para. 55.09)(second alteration in original). Accordingly, this Court examines both subject matter and personal jurisdiction.

### A. Subject Matter Jurisdiction

[2] "Under 28 U.S.C. § 1335,[5] a district court has jurisdiction of any civil action of interpleader involving money or property worth over $500 or more where two or more adverse claimants, of diverse citizenship as defined in 28 U.S.C. § 1332, 'are claiming or may claim to be entitled to such money or property,' if the plaintiff has deposited the money or property with the court." *225 New York Life Ins. Co. v. Connecticut Dev. Auth., 700 F.2d 91, 95 (2nd Cir.1983)(footnote omitted). "The requisite diversity exists if at least two of the adverse claimants are citizens of different states, without regard to the citizenship of other claimants or the stakeholder." New York Life Ins. Co. v. Connecticut Dev. Auth., 700 F.2d at 95 n. 5.

[3] This action was brought pursuant to Fed.R.Civ.P. 22[6] and 28 U.S.C. §§ 1335, 1397,[7] and 2361.[8] See Complaint ¶ 1. The Complaint alleges that Davenport and Gonya are residents, respectively, of Florida and California, see Complaint ¶¶ 5–6, while the other eight Defendants (Conroy, Griggs, Luiz, MacDonald, Marino, Nadeau, Robbio, and Von Fredrek) are residents of Rhode Island, see id. ¶¶ 4, 7–13. Therefore, diversity of citizenship is present. Additionally, Sun Life has deposited the proceeds from five of the Contracts into the Registry of the Court.[9] Thus, this Court has original jurisdiction by virtue of the federal interpleader statute, 28 U.S.C. § 1335. See State St. Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 89 n. 4 (1st Cir.2001)(stating that 28 U.S.C. § 1335 provides jurisdiction to federal courts over interpleader actions having "[t]wo or more adverse claimants, of

diverse citizenship") (alteration in original); see also Complaint ¶ 2 (alleging that this Court has original jurisdiction pursuant to 28 U.S.C. § 1335 and that venue is appropriate in this Court pursuant to 28 U.S.C. § 1397 as one or more of the defendants reside in this district). Accordingly, subject matter jurisdiction exists.

### B. Personal Jurisdiction

[4] Davenport, Gonya, Luiz, Robbio, Marino, and Nadeau each signed a waiver *226 of service of process in this matter, see Docs. # 6, # 9–13, and Von Fredrek was personally served with a summons and a copy of the Complaint, see Doc. # 5. Thus, personal jurisdiction exists as to the defaulted Defendants by virtue of either a waiver of service of process and complaint or service of a summons and complaint. See Farm Credit Bank of Baltimore v. Ferrera–Goitia, 316 F.3d 62, 68 (1st Cir.2003)(noting that personal jurisdiction over a defendant may be obtained by either service of process or waiver of service of process). Accordingly, I find that the Court has personal jurisdiction over the defaulted Defendants.

### III. Judgment

### A. Moving Party

[5] The instant Motion for Entry of Default Judgment has been filed by Griggs, a Defendant in the action. See Motion. While more frequently it is the plaintiff who moves for entry of default judgment, the right of a defendant in an interpleader action to do so is recognized. See Am. Nat'l Bank & Trust Co. of Chicago v. Alps Elec. Co., No. 99 C 6990, 2002 WL 484845, at *2 (N.D.Ill. Mar. 29, 2002)(finding that defendant was "clearly entitled" to have his motion for default judgment granted against one of two other defendants who had neither answered nor appeared); Gulf Coast Galvanizing, Inc. v. Steel Sales Co., 826 F.Supp. 197, 203–04 (S.D.Miss.1993)("Thus, an interpleader claimant may obtain judgment when the remaining claimants have defaulted, unless, however, the competing claimant is the United States."); European Am. Bank v. Royal Aloha Vacation Club, No. 87 CIV. 2154(RWS), 1988 WL 68194, at *1–2 (S.D.N.Y. June 20, 1988) (granting moving defendant's motion for default judgment against two other defendants who did not file a timely answer to the complaint).

### B. Basis

[6] Griggs has resolved her dispute with Conroy and MacDonald, the other two Defendants who have not been defaulted. *See* Stipulation Concerning Distribution of Annuity Proceeds (Doc. # 65) ("Stipulation"). Conroy claimed an interest only in Contract 056, *see* Doc. # 15 (Conroy Answer), and MacDonald claimed an interest only in Contract 065, *see* Doc. # 3 (MacDonald Answer). They have each executed a stipulation authorizing and directing Sun Life to distribute the proceeds of the annuity contract in which they claimed an interest to Griggs. *See* Stipulation ¶¶ 4, 5. Conroy and MacDonald have also agreed to execute releases in favor of Sun Life after the proceeds have been distributed to Griggs. *Id.* ¶ 7. Thus, in light of the Stipulation, for practical purposes, the only remaining defendants in this action are Griggs and the defaulted Defendants.

[7] A named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted. *See Gulf Coast Galvanizing, Inc. v. Steel Sales Co.,* 826 F.Supp. 197, 203 (S.D.Miss.1993)(citing *Gen. Accident Group v. Gagliardi,* 593 F.Supp. 1080, 1089 (D.Conn.1984)); *Nationwide Mut. Fire Ins. Co. v. Eason,* 736 F.2d 130, 133 n. 4 (4th Cir.1984)("if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund"). Thus, I find that the defaulted Defendants by their failure to answer or otherwise respond to the Complaint have forfeited any claim to the proceeds from annuity Contracts 224, 233, 038, 074, and 929.[10] I further find that Griggs by virtue *227 of her status as the sole remaining Defendant who has asserted a claim to the proceeds of those Contracts is entitled to the funds which have been deposited in the Registry of the Court. *See New York Life Ins. Co. v. Connecticut Dev. Auth.,* 700 F.2d 91, 95–96 (2nd Cir.1983)(affirming portion of judgment which directed that proceeds deposited with court be paid to the sole remaining non-defaulted defendant); *Gen. Accident Group v. Gagliardi,* 593 F.Supp. 1080, 1089 (D.Conn.1984)(noting affirmation in *New York Life* of "judgment directing that the proceeds already deposited

with the court be paid to the sole remaining non-defaulted claimant").

#### C. Form

Default judgments should enter against the defaulted Defendants (Davenport, Gonya, Luiz, Marino, Nadeau, Robbio, and Von Fredrek) and in favor of Griggs concerning the proceeds of Contracts 224, 233, 038, 074, and 929. *See* Motion at 4. The proceeds of these Contracts which have been deposited into the Registry of the Court should be paid to Griggs, and the defaulted Defendants should be restrained from instituting any action against Sun Life relating to the recovery of the proceeds of those Contracts. *See* Complaint, Prayer for Relief.

#### IV. Conclusion

For the reasons stated above, I recommend that the Motion for Entry of Default Judgment be granted (in the form stated above). Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. *See* Fed.R.Civ.P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. *See United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

March 16, 2006.

#### All Citations

431 F.Supp.2d 220

#### Footnotes

1 The Court spells Defendant Frederick Von Fredrek's name as it appears in the Complaint. A different spelling, "Von Frederek," appears in the caption of his answer (Document ("Doc.") # 45) and motion to vacate default (Doc. # 44). A third spelling appears in the title and signatory paragraph of the latter two documents: "Von Frederick." Answer of Defendant Frederick Von Frederick at 1, 6; Defendant Frederick Von Frederick's Motion to Vacate Default at 1.

2 Because default has entered against Defendants Paul S. Davenport ("Davenport"), Paul Gonya ("Gonya"), Jeffrey Luiz ("Luiz"), A. Michael Marino ("Marino"), Robert R. Nadeau ("Nadeau"), Anthony J. Robbio, Jr. ("Robbio"), and Frederick Von Fredrek ("Von Fredrek") (collectively the "defaulted Defendants"), *see* Clerk's Entry of Default (Docs.# 31, # 32, # 33, # 34, # 35, # 36, # 37), as to the defaulted Defendants the factual allegations of the Complaint are taken as true, *Brockton Sav. Bank v. Peat. Marwick, Mitchell & Co.,* 771 F.2d 5, 13 (1st Cir.1985)("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its ... claims must be

considered established as a matter of law.") *see also Ortiz–Gonzalez v. Fonovisa,* 277 F.3d 59, 62–63 (1st Cir.2002)("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.") (internal quotation marks and citation omitted).

3    The particular disputes were between:
Griggs and Von Fredrek as to Contract 224, Complaint ¶ 23;
Griggs and Gonya as to Contract 233, *id.* ¶ 27;
Griggs and Marino as to Contract 038, *id.* ¶ 31;
Griggs and Conroy as to Contract 056, *id.* ¶ 35;
Griggs and MacDonald as to Contract 065, *id.* ¶ 40;
Griggs and Nadeau as to Contract 074, *id.* ¶ 44; and
Griggs and Luiz as to Contract 929, *id.* ¶ 49.

4    Sun Life's motion to deposit proceeds originally sought to deposit the proceeds of all seven Contracts with the Clerk. *See* Plaintiff's, Sun Life Assurance Company of Canada, (U.S.) Motion to Deposit Proceeds into Court (Doc. # 21). At the January 6, 2006, hearing Sun Life amended the motion to exclude Contracts 056 and 065 from its scope. *See* Memorandum and Order of 1/12/06 at 2.

5    28 U.S.C. § 1335 states that:
(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.
28 U.S.C. § 1335.

6    Fed.R.Civ.P. 22, which governs interpleader actions, states:
(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.
(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.
Fed.R.Civ.P. 22.

7    28 U.S.C. § 1397 provides: "Any civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397.

8    28 U.S.C. § 2361 provides:
In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.
28 U.S.C. § 2361.

9   Sun Life deposited the sum of $273,692.83 into the Registry of the Court on January 24, 2006.

10  In the process of finding that Gonya, Marino, Robbio, Nadeau, and Von Fredrek were not entitled to have the defaults vacated, the Court found that none of them had demonstrated that he had a meritorious claim to funds which Sun Life sought to deposit. *See* Memorandum and Order of 1/12/06 at 9.

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 4**

2013 WL 556800
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

TRUSTEES OF the ILWU–PMA PENSION PLAN,
Plaintiffs,
v.
Pamela COATES, et al., Defendants.

No. C–11–3998 EMC.
|
Docket No. 67.
|
Feb. 12, 2013.

**Attorneys and Law Firms**

Christine S. Hwang, Lindsay Rose Nicholas, Leonard Carder, LLP, San Francisco, CA, D. Ward Kallstrom, Kathleen Cahill Slaught, Michelle Marie Scannell, Seyfarth Shaw LLP, San Francisco, CA, for Plaintiffs.

Brian Leroy Larsen, Lauren Beth Gelber, Law Office Brian L. Larsen, San Francisco, CA, for Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

EDWARD M. CHEN, District Judge.

**I. INTRODUCTION**

\*1 Plaintiffs the Trustees of the ILWU–PMA[1] Pension Plan ("the Trustees") have brought an interpleader action under Fed.R.Civ.P. 22 to resolve conflicting claims to decedent James A. Taylor's ILWU–PMA Pension Plan Survivor Pension benefits ("the Benefits"). *See* Complaint in Interpleader (Docket No. 1). In the instant Motion for Default Judgment (Docket No. 67), the Trustees apply to this Court for an order entering default judgment against Defendant Mary Taylor based on her failure to appear or otherwise respond to Plaintiffs' complaint within the time prescribed by the Federal Rules of Civil Procedure. The Trustees also request that this Court enjoin the Defendant

from initiating any further legal action regarding her entitlement to the Benefits. Having considered Plaintiffs' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Plaintiffs' motion for the reasons discussed herein.

**II. FACTUAL BACKGROUND**

The Trustees are the named fiduciaries and designated administrators of the ILWU–PMA Pension Plan ("the Plan"), an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.* Compl. ¶¶ 3–4. Decedent James A. Taylor was a Plan participant who began receiving monthly benefits from the Plan when he retired on November 1, 2003, until his death on November 15, 2009. *Id.* ¶¶ 6, 29. The Plan provides that upon the death of a plan participant, the "surviving spouse [as defined by the Plan] will receive a monthly Survivor Pension benefit for the remainder of the surviving spouse's life." *Id.* ¶ 37. At the time this suit was filed, the amount of plan benefits payable to the surviving spouse equaled $2,299.27 per month. *Id.* ¶ 39.

Plaintiffs' complaint does not indicate that the pension plan documents record the identity of the decedent's spouse. However, records associated with a separate employee benefit plan sponsored by the ILWU and PMA do. Mr. Taylor was also a participant in the ILWU–PMA Welfare Plan ("Welfare Plan"), "a separate ERISA plan providing hospital, medical, and other benefits to longshore workers and their dependents." Comp. ¶ 14. "Under the Welfare Plan, longshore workers designate their dependants, including dependent spouses, as eligible for Welfare Plan coverage by submitting a 'Record Change Form' or a 'Dependent Verification Form.' " *Id.* ¶ 15. Plaintiffs, through the ILWU–PMA Benefit Plan Office, received a total of 11 such forms from the decedent over the course of his participation in the two plans. *See id.* ¶¶ 13–30. These forms identify five separate individuals as the decedent's spouse. Plaintiffs have named each of these five individuals as a defendant in this action "on information and belief that [each] may have an interest in the benefits at issue." *Id.* ¶¶ 9–11.

Defendant Laversa Pier, a resident of San Francisco, California, was married to James Taylor from October 11, 1980, until the dissolution of their marriage on a date before November 12, 1982. Compl. ¶ 9. Defendant Jennifer Taylor, a resident of Brentwood, California, was married to James Taylor on October 10, 1982. *Id.* ¶ 7.

Jennifer Taylor was deleted as a dependent spouse by the decedent on a Record Change Form filed on January 18, 1984. *Id.* ¶ 21. Defendant Mary Taylor, whose residence is unknown, was married to James Taylor around January 1984 until the dissolution of their marriage around February 1985. *Id.* ¶ 10. Defendant Sheryl Perdue, a resident of Lithonia, Georgia, was married to James Taylor from November 30, 1985, until the dissolution of their marriage on October 31, 1989. *Id.* ¶ 11. Defendant Pamela Coates, a resident of San Francisco, California, married James Taylor on August 6, 1999. *Id.* ¶ 8. At the time of his retirement, James Taylor indicated to the ILWU–PMA Benefit Plan Office that Pamela Coates was his legal spouse. *Id.* ¶ 29. On February 4, 2009, Mr. Taylor filed a "Dependent Verification Form" deleting Pamela Coates as a dependent spouse, and when he died later that year, Mr. Taylor's death certificate stated that his marital status was "widowed." *Id.* ¶¶ 30–31.

**\*2** In January 2010, approximately two months after the decedent's death, Pamela Coates and Jennifer Taylor each submitted an "Application for Survivor Pension" on account of their marriage to James Taylor. Compl. ¶¶ 32–33. At the request of the ILWU–PMA Benefit Plan Office, both defendants separately submitted copies of their marriage certificates and letters from California Superior Courts for the Counties of Alameda, San Francisco, and Contra Costa, stating that no record of the dissolution of either of their marriages exists. *Id.* ¶¶ 34–36. "Because of the conflicting information regarding the overlapping dates of marriage between James A. Taylor and the five Defendants," Plaintiffs state they "cannot determine whether and to what extent Defendants" are entitled to Mr. Taylor's Survivor Pension benefits. *Id.* ¶ 38.

### III. *PROCEDURAL BACKGROUND*

In an effort to resolve these conflicting claims to the Benefits, the Trustees filed this interpleader[2] action under Fed.R.Civ.P. 22, naming James Taylor's alleged spouses and former spouses as defendants. Compl. at 2. As a general rule, after properly effecting service of process in an interpleader action, "[a] named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted." *Sun Life Assur. Co. of Canada, (U.S.) v. Conroy,* 431 F.Supp.2d 220, 226 (D.R.I.2006). Pamela Coates was served with a summons and copy of the complaint on September 6, 2011, and filed a timely answer to the complaint on September 30, 2011. *See* Docket Nos. 9, 10. Of the five defendants, Ms.

Coates is the only one who has answered Plaintiffs' interpleader action.

Jennifer Taylor was served on August 29, 2011. *See* Docket No. 11. The Trustees allege that a person representing herself as Jennifer Taylor had a telephone conversation with Plaintiffs' counsel on September 2, 2011, to inquire about the summons and complaint she received. Declaration of Lindsay Nicholas ("Nicholas Decl.") (Docket No. 39) ¶ 6. Laversa Pier was served on September 19, 2011. *See* Docket. No. 12. The Trustees allege that Laversa Pier contacted Plaintiffs' counsel on September 20, 2011, to indicate that she had no interest in claiming the Benefits on account of her marriage to James Taylor. Nicholas Decl. ¶ 11. Other than these brief interactions with Plaintiffs' counsel, neither Ms. Pier nor Ms. Taylor filed a response to the complaint or otherwise entered an appearance in this action. The Trustees moved for entry of default against these two defendants, which the Clerk entered on November 17, 2011. *See* Docket No. 19.

After unsuccessful attempts to locate defendants Mary Taylor and Sheryl Perdue via searches of three electronic databases, Plaintiffs moved for permission to serve Mary Taylor and Sheryl Perdue by publication. *See* Pl.'s Motion to Serve by Publication (Docket No. 23). The Court granted the motion, and the Plaintiffs published summons for Mary Taylor in the San Franciscobased publications *The Recorder* and the *San Francisco Chronicle. See* Docket Nos. 26, 29. The Trustees published summons for Sheryl Perdue in the *The Recorder,* the *San Francisco Chronicle,* and the Atlanta-based publication the *Daily Report. See* Docket Nos. 25, 27–28. After Ms. Taylor and Ms. Perdue failed to file a timely answer or otherwise appear, the Clerk entered default against Mary Taylor on June 22, 2012, and against Sheryl Perdue on July 2, 2012. *See* Docket Nos. 46, 49.

**\*3** The Plaintiffs thereafter filed a Motion for Default Judgment against all four defendants on the grounds that none of them had timely filed an answer or otherwise appeared in this action. *See* Docket No. 37. Magistrate Judge Cousins heard the motion and filed a report and recommendation in favor of entering default judgment against all four defendants. *See* Docket No. 50. This Court adopted in part Judge Cousins' report and recommendation, and granted Plaintiffs' motion against Jennifer Taylor, Laversa Pier, and Sheryl Perdue, enjoining them from "pursuing further action in state or federal court regarding any claim to the benefits at issue." Order Adopting in Part Report and Recommendation ("Order") (Docket No. 56) at 1. As to Defendant Mary Taylor, however, the Court voiced "concerns that a

default judgment against her may be premature." *Id.* Plaintiffs' database searches for Mary Taylor identified "hundreds of individuals with this name, none of whom have a birth date that matches the Welfare Plan's records." Pl.'s Motion to Serve by Publication at 3. The Court reasoned that, since the "complaint does not allege Mary Taylor resides in the San Francisco Bay Area," nationwide publication "would be more reasonably calculated to reach Ms. Taylor." Order at 2. It, therefore, denied Plaintiffs' motion for entry of default judgment, but granted "leave of the Court to publish summons as to Mary Taylor via a nationwide publication and, assuming she makes no appearance thereafter, seek a default judgment." *Id.*

Following the Court's ruling, the Plaintiffs published summons for Mary Taylor in the Washington, D.C.-based publication *The Washington Post. See* Docket No. 63. After Mary Taylor failed to file a timely answer or otherwise appear, the Clerk entered default against her on December 20, 2012. *See* Docket No. 66. The Plaintiffs thereafter brought their instant motion for entry of default judgment against Mary Taylor. Docket No. 67. The Court held a hearing on Plaintiffs' motion on February 7, 2013, at which Defendant Mary Taylor failed to appear.


## IV. *DISCUSSION*

### A. *Jurisdiction*
In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the subject matter and the parties to the case. *See In re Tuli,* 172 F.3d 707, 712 (9th Cir.1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").


### 1. *Subject Matter Jurisdiction*
This Court has subject matter jurisdiction in this ERISA case under 29 U.S.C. § 1132(e)(1).[3] ERISA permits fiduciaries and plan administrators to obtain equitable relief to enforce any provisions of the terms of an ERISA-governed plan. *See* 29 U.S.C. § 1132(a)(3). The Ninth Circuit has held that such "equitable relief" includes interpleader actions that seek to determine the rightful beneficiaries to the proceeds of an ERISA covered plan in the face of multiple conflicting claimants. *Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030, 1034 (9th Cir.2000).

### 2. *Personal Jurisdiction*
*\*4* To enter default judgment, the Court must also have a basis for the exercise of personal jurisdiction over the defaulting defendant. *See Tuli,* 172 F.3d at 712 ("A judgment entered without personal jurisdiction over the parties is void."). Under ERISA, fiduciaries may bring an enforcement action in the federal district court of any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Under this nationwide service of process provision, a court may exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *Vivien v. Worldcom, Inc.,* No. 02–cv–01329 WHA, 2002 WL 31640557, at \*2 (N.D.Cal. July 26, 2002); *see also Denny's, Inc. v. Cake,* 364 F.3d 521, 524 (4th Cir.2004) (holding that a federal district court in South Carolina could exercise personal jurisdiction over the California Labor Commissioner because the ERISA plan was administered in South Carolina, the Commissioner had been served in California, and the action was a proper ERISA enforcement action).

In this case, the Plaintiffs have brought an ERISA enforcement action under 29 U.S.C. § 1132(a)(3) in an effort to "enforce the terms of the Pension Plan," that is, to determine "to whom the Survivor Pension benefits payable on account of James A. Taylor ... are to be paid." Compl. at 2. The complaint does not allege Mary Taylor's state of residence, but under ERISA's nationwide service of process provision, this Court may exercise personal jurisdiction over her even if she does not reside in this judicial district. *See Vivien,* 2002 WL 31640557 at \*2. Mary Taylor presumably falls within ERISA's nationwide service of process provision as long as she is a resident of the United States. *See Combs v. Doe,* No. 10–cv–01120 HRL, 2011 WL 738052, at \*2 (N.D.Cal. Feb.23, 2011) (recommending that default judgment be entered against a defendant whose identity and location are unknown). The Court has been given no reason to believe that she is not. Thus, the Court has a basis for exercising personal jurisdiction over Mary Taylor in order to grant default judgment against her.


### B. *Default Judgment*

### 1. *Adequacy of Service of Process*
As a threshold matter in considering a motion for default

judgment, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters,* No. C–00–0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D.Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that "an individual ... may be served in a judicial district of the United States by ... following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located...." California law allows for service by publication if the party to be served "cannot with reasonable diligence be served in another manner," and is a "necessary or proper party to the action" or "has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action." Cal.Code Civ. Pro. § 415.50(a). In order to effectuate service by publication, a party must publish the summons "in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." Cal.Code Civ. Pro. § 415.50(b). "If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party." *Id.* California law also specifies that service by publication will be satisfied on the twenty-eighth day following the first date of publication, with the summons being published at least once a week for four consecutive weeks, with at least five days intervening between the publication dates. *See* California Government Code § 6064.

**5** Here, the Plaintiffs have satisfied all requirements for effectuating service on Defendant Mary Taylor by publication. After unsuccessful attempts to locate Mary Taylor via searches of three electronic databases, Plaintiffs published summons for her in *The Recorder* and the *San Francisco Chronicle. See* Docket Nos. 26, 29. Following this Court's Order denying Plaintiffs' motion for entry of default judgment, and in an effort to effectuate service on the Defendant by national publication, Plaintiffs published summons for Mary Taylor in *The Washington Post. See* Docket Nos. 62, 63. Plaintiffs' declaration accompanying the instant motion (Declaration of Lindsay Nicholas, Docket No. 69), and their Proof of Publication (Docket No. 63), reflect that they have satisfied the requirements of California Government Code § 6064. Through national publication of the summons, Plaintiffs have discharged their duty to exercise "reasonable diligence" in effecting alternate service in a manner most likely to give actual notice to Mary Taylor of this action, as required by Cal.Code Civ. Pro. § 415.50. Thus, the record contains sufficient evidence to conclude that Mary Taylor has been properly

served and noticed of this action as required by Fed. R. Civ. P 4 and the California Code of Civil Procedure.

*2. Merits of Motion for Default Judgment*
After the entry of default, a court may grant default judgment on the merits of a case. *See* Fed.R.Civ.P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986). Because default has already been entered in this case, the Court must construe as true all factual allegations in Plaintiffs' complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987). *See also Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir.1977) (holding that at the default judgment stage, the factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties). Facts not contained in the pleadings and claims which are legally insufficient, however, are not established by default. *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978).

The Court finds that all seven *Eitel* factors weigh in favor of granting default judgment against Mary Taylor. First, the Plaintiffs would suffer prejudice if the Court does not enter default judgment against this Defendant because they would be denied the finality of judgment sought through their interpleader action. *See Trustees of IL WU-PMA Pension Plan v. Peters,* 660 F.Supp.2d at 1144 (finding prejudice "if default judgment were not granted because [the ERISA plan fiduciaries] would be denied the certainty and finality that judgment in an interpleader action is intended to provide."); *see also W. Reserve Life Assurance Co. of Ohio v. Canul,* No. 11–cv–01751 AWI, 2012 WL 844589, at *2 (E.D.Cal. Mar.12, 2012), *report*

*and recommendation adopted,* No. 11–cv–01751 AWI, 2012 WL 1074952 (E.D.Cal. Mar.29, 2012) (holding that the plaintiff "would be prejudiced if a default judgment is not granted" because plaintiff "has no other alternative by which to evaluate [d]efendant's claim to the life insurance policy.") (citation omitted); *W. Conference of Teamsters Pension Plan v. Jennings,* No. 10–cv–03629, 2011 WL 2609858, at *3 (N.D.Cal. June, 5, 2011) ("Plaintiff and [answering defendant] would suffer prejudice if the Court does not enter default judgment. The dispute concerns [d]efendants' competing claims to interpleaded funds. Without entry of default judgment, the competing stakeholders' claims cannot be resolved.").

*6 The second and third factors—the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint—also weigh in favor of default judgment. These two factors together require "plaintiffs' allegations [to] state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund,* No. 94–cv–2684 TEH, 1996 WL 75314, at *2 (N.D.Cal. Feb.13, 1996). *See also Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978) ("The issue here is whether the allegations in the complaint are sufficient to state a claim on which the [moving party] may recover."). The primary purposes for an action in interpleader are "(1) to protect the party depositing the funds with the court from secondary, follow-up actions and (2) to protect the resources of the interpleading party." *W. Reserve Life Assur. Co. of Ohio v. Canul,* 2012 WL 844589 at *2. Accepting the Plaintiffs' allegations in the complaint as true, the Court finds that the Trustees have stated a claim upon which they may recover, as resolution of the five Defendants' rights to the plan benefits at issue will protect the Plaintiffs from multiple liability. *See Canul,* 2012 WL 844589 at *2. Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment against Mary Taylor.

The fourth *Eitel* factor, the sum of money at stake in the action, weighs neither for nor against an entry of default judgment. In interpleader actions, the sum of money at stake, however significant, is not dispositive as the interpleading party is not asserting an interest in the interpleaded funds, nor are they seeking damages. *Transamerica Life Ins. Co. v. Estate of Ward,* No. 11–cv–0433 JAM, 2011 WL 5241257, at *4 (E.D.Cal. Oct.31, 2011); *see also Jennings,* 2011 WL 2609858 at *3 (finding that the fourth *Eitel* factor is neutral in an interpleader action). The Plaintiffs in this action are not asserting a claim to the funds, but are attempting to distribute the funds to the party entitled to the plan benefits. There is no dispute that the funds to be deposited and distributed are determined by the Plan.

The fifth and sixth *Eitel* factors recommend that a court consider "the possibility of a dispute concerning material facts" and "whether the default was due to excusable neglect" in assessing whether to grant default judgment. *Eitel v. McCool,* 782 F.2d at 1471–72. The Court finds that both factors weigh in favor of entering default judgment. Mary Taylor has made no effort to challenge the Trustees' interpleader complaint. Therefore, there is nothing on the record before the Court to suggest that a factual dispute exists. *See Transamerica Life Ins. Co.,* 2011 WL 5241257 at *4 (finding that "there is a very low likelihood that any genuine issue of material fact exists" because "the court [assumes] the truth of well-pleaded facts in the complaint following the clerk's entry of default"); *see also Canul,* 2012 WL 844589 at *3 ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case."). Further, considering the merits of this action, it is unlikely that Mary Taylor would assert a competing claim to be designated the decedent's "surviving spouse" under the plan, given that her marriage to Mr. Taylor ended in February 1985, and the decedent twice remarried in the twenty four years before his death. Turning to the sixth factor, the Plaintiffs sought and obtained administrative relief to proceed with substituted service on Mary Taylor. *See* Docket Nos. 23–24, 61–62. The Plaintiffs then effectuated service by publication. *See* Docket Nos. 26, 29, 63. "[I]t is unlikely that [the defendant's] failure to answer, and the resulting defaults entered by the [clerk], were the result of excusable neglect" where "[the plaintiff] effectuated service on [the defendant] via substituted service, which is a method permitted by law." *Canul,* 2012 WL 844589 at *3. Therefore, these two factors also weigh in favor of default judgment.

*7 Finally, while public policy favors decisions on the merits, *see Eitel,* 782 F.2d at 1472, Mary Taylor's failure to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo, Inc. v. California Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002). "Under Fed.R.Civ.P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id.* At any rate, in light of the weight of the above factors in favor of entering default judgment, this last *Eitel* factor is not dispositive. *See Transamerica Life Ins. Co.,* 2011 WL 5241257 at *4 (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment).

In sum, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendant Mary Taylor.

### C. *Injunction Against Defaulting Defendants*

The Plaintiffs' interpleader complaint seeks an "Injunctive Order of this Court" to prevent the named Defendants "from commencing or maintaining any action against the Plaintiffs, the Pension Plan,[ ] ILWU, PMA, or the Plans Office regarding entitlement to the Survivor Pension benefits payable under the Pension Plan on account of James A. Taylor." Compl. at 10. Unlike statutory interpleader, rule interpleader under Fed.R.Civ.P. 22 does not authorize courts to enjoin litigants from pursuing further claims in state or federal court with regard to the res at issue. *See* Fed.R.Civ.P. 65(e) ("These rules do not modify ... 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader."). However, courts have used the All Writs Statute, 28 U.S.C. § 1651, to enjoin defendants in an interpleader action from bringing future proceedings regarding the same claim in federal court. *See New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir.1998) ("Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court. Accordingly, a federal court in a Rule 22 interpleader proceeding may issue an injunction to restrain the parties from pursuing such issues in another federal court.") (citations omitted). This is because relitigation of these issues "would be judicially wasteful and raise the possibility of inconsistent results. It would also defeat the purpose of the [plaintiffs'] interpleader action." *Trustees of IL WUPMA Pension Plan v. Peters*, 660 F.Supp.2d at 1145.

Further, courts have held that injunctions issued pursuant to the All Writs Statute may be used to enjoin parties from relitigating the same issues or claims before state courts. Normally, the Anti–Injunction Act, 28 U.S.C. § 2283, "limits the ability of federal courts to enjoin state court proceedings." *Peters*, 660 F.Supp.2d at 1144. However, an exception has been recognized for injunctions that are "necessary in aid of [the court's] jurisdiction, or to protect or effectuate its judgment." *Id.* This exception is referred to as the "relitigation exception." *Id.* (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988)). *See also Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 707 (7th Cir.1991) ("A federal court presiding over an interpleader action may stay pending state court proceedings involving the same interpled fund under the 'necessary in aid of its jurisdiction' exception to the Anti–Injunction Act.").

*8 To be afforded injunctive relief from relitigation, the party seeking the injunction must prove that it would otherwise suffer irreparable harm. *Peters*, 660 F.Supp.2d at 1144–45 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). The Court will generally grant such an injunction "where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Id.* (citing *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir.1990)). In this action, the Plaintiffs would suffer irreparable harm if faced with future claims to the interpled funds brought by Defendant Mary Taylor after this action has been adjudicated against her. *See id.* at 1145 (finding irreparable harm where relitigation would be "judicially wasteful and raise the possibility of inconsistent results"). The Plaintiff fiduciaries and administrators here are merely disinterested stakeholders seeking to enforce the terms of an ERISA employee benefits plan and distribute the benefits to the appropriate party. As in *Peters*, relitigation would defeat the purpose of Plaintiffs' interpleader action and result in waste. *See id.* at 1145. An injunction here is necessary in order to prevent judicial wastefulness and the "possibility of inconsistent results." *See id.* Thus, the Court finds that Mary Taylor must be enjoined from bringing any further action in state or federal court regarding her claims to the subject benefits on account of James Taylor.

### V. *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for entry of default judgment against Defendant Mary Taylor, and enjoins her from commencing or maintaining any action against the Plaintiffs regarding her entitlement to the Survivor Pension benefits payable under the Pension Plan on account of James A. Taylor.

This order disposes of Docket No. 67.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 556800, 55 Employee Benefits Cas. 1009

## Footnotes

1    ILWU–PMA is an abbreviation for the International Longshore and Warehouse Union and the Pacific Maritime Association, both of whom sponsor the ILWU–PMA Pension Plan.

2    Interpleader allows a party "subjected to conflicting claims by two or more persons growing out of a single obligation" to "put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." Zechariah Chafee, Jr., *The Federal Interpleader Act of 1936: I,* 45 Yale L.J. 963, 963 (1936). Interpleader exists primarily for the benefit and protection of the party subject to multiple claims, allowing them to avoid the "burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing." *State of Texas v. State of Florida,* 306 U.S. 398, 412 (1939). *See also Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030, 1034 (9th Cir.2000).

3    Section 1132(e)(1) provides "[e]xcept for actions under subsection (a)(1)(B) of this section [inapplicable here], the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."