# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION FUND, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17 C 02658 |
| ROGER GOSSETT and CINDY K. GOSSETT, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this interpleader action, the Chicago Painters and Decorators Pension Fund seeks a declaratory judgment as to whom to pay pension benefits earned by defendant/cross-plaintiff Roger Gossett. A divorce settlement gave a 50 percent interest in Mr. Gossett's pension benefits to his former wife, defendant Cindy K. Gossett. In a cross-claim, Mr. Gossett asserts that he bought out Ms. Gossett's share of the pension benefits in 2011 for $10,000. Ms. Gossett maintains that her former husband defrauded her in that deal by misrepresenting the value of the pension benefits. Ms. Gossett, who is proceeding *pro se*, has produced a litany of complaints about her treatment by Mr. Gossett during and after their 23-year marriage. She has not, however, properly contested the facts on which Mr. Gossett's claim relies and that failure requires judgment on the cross-claim in Mr. Gossett's favor and entry of a judgment declaring that Ms. Gossett has no claim to any share of the pension benefits allocable to Mr. Gossett from the Fund.

## Background

### I. Ms. Gossett's Failure to Comply with Local Rules

The facts material to this dispute are drawn exclusively from Mr. Gossett's motion for

summary judgment on his cross-claim because, notwithstanding the Court's efforts to accommodate her lack of familiarity with the required procedures,[1] Ms. Gossett has failed to properly contest those facts. While legal filings by *pro se* litigants are to be liberally construed, *Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997), "the Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure," *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). The Local Rules for the Northern District of Illinois require a party opposing a motion for summary judgment to (1) file a response to each numbered paragraph in the movant's statement of material facts including, in the case of disagreement, a specific reference to the affidavits, parts of the record, or other supporting materials relied upon and (2) file its own statement, consisting of short, numbered paragraphs, of any additional facts that would require denial of summary judgment. LR 56.1(b)(3). All material facts set forth in the moving party's statement are deemed admitted unless controverted by the party opposing the

---

[1] Due to her *pro se* status, and the fact that she is responding to a claim rather than asserting one, the Court has excused myriad procedural missteps by Ms. Gossett, beginning with her failure to answer the Fund's interpleader complaint or Mr. Gossett's cross-complaint in compliance with the requirements of Rule 8(b) (requiring specific responses to all averments of the complaint) and 8(c) (which requires an affirmative defense of fraud, which Ms. Gossett asserts, to be pleaded in response to the complaint). Ms. Gossett, who resides in the state of Washington, has been permitted to participate telephonically in all status conferences. Ms. Gossett nonetheless failed to dial in for several status hearings, prompting the Court to enter a judgment for Mr. Gossett, ECF No. 45, based on Ms. Gossett's failure to participate in the suit. The Court vacated that judgment, however, in consideration of health issues to which Ms. Gossett subsequently attributed her failure to participate fully in the case. Despite continuing to miss status hearings (on April 10, 2018 and January 10, 2019), the Court has not dismissed the case for want of prosecution or imposed any other sanction on Ms. Gossett. When Ms. Gossett exceeded the permitted number of interrogatories, the Court narrowed the queries to those relevant to the case and directed Mr. Gossett to respond. Ms. Gossett also submitted several letters to the Court after briefing had concluded; the Court has reviewed these filings even though they are untimely. As these and her prior filings reflect, Ms. Gossett's focus has been on airing her grievances about Mr. Gossett's conduct during their marriage and divorce proceedings rather than on adducing admissible evidence to support her claim that Mr. Gossett defrauded her regarding the value of her share of his pension benefits in 2011.

motion for summary judgment. Additional facts must be supported by admissible evidence and where, as here, a party relies on her own testimony, she is required to submit a declaration signed under penalty of perjury.

Ms. Gossett concedes that she received notice of these rules from Mr. Gossett's attorney, ECF No. 62,[2] but she has not complied with Local Rule 56.1 in form or in substance. Ms. Gossett has not specifically admitted or denied each of the facts alleged in Mr. Gossett's statement of material facts with reference to the numbered paragraph; facts not specifically controverted are deemed admitted. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."). Importantly for this case, although Ms. Gossett has generally asserted that she did not know the value of the pension benefits and that Mr. Gossett led her to believe that they might not be worth anything, she has not specifically controverted in any way Mr. Gossett's assertion that she had been receiving statements of the value of the Fund pension benefits since 2006, some five years before she entered into the agreements to sell her share of those benefits to Mr. Gossett for $10,000. These facts are therefore deemed admitted. Where she **has** denied certain facts, Ms. Gossett has not provided support based on record evidence, and "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *see also DiPerna v. Chi. Sch. of Prof'l Psychology*, 222 F. Supp. 3d 716, 718 (N.D. Ill. Nov. 28, 2016) ("To the extent that a response to a statement of material fact provides only

---

[2] The Court also advised Ms. Gossett of the need to comply fully with the Court's summary judgment procedures. ECF No. 56 ("The parties' attention is directed to the requirements of Local Rule 56.1 and 56.2 governing the filing and response to motions for summary judgment.").

3

extraneous or argumentative information, this response will not constitute a proper denial of fact, and the fact is admitted.").

Additional facts alleged by Ms. Gossett are not supported by affidavit or other relevant evidence, and therefore are disregarded. *See Fife v. mPhase Techs., Inc*, No. 12-CV-9647, 2014 WL 7146212, at *2 (N.D. Ill. Dec. 15, 2014) ("The Court may disregard statements and responses that do not properly cite to the record."); *see also Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Specifically, in her assertion that Mr. Gossett misrepresented the value of the Fund at the time she agreed to waive her share, Ms. Gossett relies only on her own unsworn statement, which is insufficient; "unsworn allegations are not evidence," *Reed v. Allied Waste Transp., Inc.*, 621 F. App'x 345, 347 (7th Cir. 2015) (citing *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003)), and do not meet the requirements of Rule 56. *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990). *See also, e.g.*, *Cady v. Village of McCook*, 57 F. App'x 261, 263 (7th Cir. 2003) (because plaintiff "did not file any timely, sworn materials in response to the defendants' summary judgment motion, the judge was required to consider only facts included in the defendants' summary judgment materials"); *McConnell v. Ritz-Carlton Watertower*, 39 F. App'x 417, 420 (7th Cir. 2002) (district court acted within its discretion in ignoring submissions that were not subscribed under penalty of perjury).

Given Ms. Gossett's failure to comply with Local Rule 56.1, all facts set forth by Mr. Gossett are deemed admitted. That said, the Court is not strictly limited to Mr. Gossett's statement of facts in assessing his motion for summary judgment, as it may also consider the "other materials

in the record." Fed. R. Civ. P. 56(c)(3). With that understanding, the Court turns to the details of the case.

## II. Uncontested Facts

Roger Gossett and Cindy K. Gossett were divorced on or about November 30, 2006, in Harris County, Texas. Roger Gossett's Statement of Facts ("RGSOF") ¶ 9. As part of the divorce settlement, the two executed a Qualified Domestic Relations Order ("QDRO") on July 3, 2007, Mot. Summ. J. Ex. B, ECF No. 58, which gave each of them a 50% interest in the vested accrued Fund benefits allocable to Mr. Gossett by virtue of his participation in the Chicago Painters and Decorators Pension Plan. RGSOF ¶ 11. Ms. Gossett's divorce attorney sent a certified copy of the QDRO to the Fund in a letter dated March 12, 2008. First Am. Compl. ¶ 8, ECF No. 23. The Fund's attorney sent a letter on March 28, 2008 to the Gossetts' respective attorneys stating that the Plan accepted the QDRO, though certain provisions could not be honored.[3] *Id.* ¶ 9.

In 2011, Ms. Gossett approached Mr. Gossett with a request to borrow money, which he declined. RGSOF ¶¶ 12-13. She offered to sell her portion of the Fund benefits to Mr. Gossett for $20,000, but Mr. Gossett declined. *Id.* ¶¶ 14-15. After further negotiations, the parties agreed that Roger Gossett would pay Cindy Gossett $10,000 in exchange for a waiver of Ms. Gossett's right to half of the pension benefits. *Id.* ¶ 16. Accordingly, the two executed a notarized Agreement to Revise Property Division Set Forth in Final Decree of Divorce, *id.* ¶¶ 18-19; *see also* Mot. Summ. J. Ex. F, ECF No. 58. In the notarized agreement, Ms. Gossett agreed to "waive and forever after disavow any right, title, or interest in and to" the 50% of benefits conveyed to her in the QDRO and acknowledged that "one hundred (100%) percent of said benefits shall be the sole and separate

---

[3] The unenforceable provisions included a lump-sum payment for differences due to adjustment in benefits, an early retirement subsidy, and a beneficiary of the Alternate Payee, none of which are relevant to this action. *See* First Am. Compl. Ex. 2, ECF No. 23.

5

property of Roger Gossett." RGSOF ¶ 20; Mot. Summ. J. Ex. F at 2, ECF No. 58. Ms. Gossett "further agree[d] that she [would] sign any and all documents when submitted to her which will effectively terminate the Qualified Domestic Relations Order presently on file with the International Brotherhood of Painters and Allied Trades . . . ." Mot. Summ. J. Ex. F at 2, ECF No. 58. In addition, Ms. Gossett sent a letter dated August 17, 2011 to Mr. Gossett's then-attorney agreeing that "in return for my percentage of the Chicago Painter's Union retirement fund in our divorce decree, I will receive ten thousand dollars ($10,000) less what is owed [Mr. Gossett]." *Id.* Ex. D. At the time she executed these agreements in 2011, Ms. Gossett had been receiving financial statements from the Fund for approximately five years.[4] RGSOF ¶¶ 24-25.

Pursuant to the Agreement, Mr. Gossett paid Ms. Gossett $10,000. RGSOF ¶ 17. The payment took the form of $3,398.85 paid to HSBC Auto Finance by Mr. Gossett on Ms. Gossett's behalf, $3,701.15 to be paid directly to Ms. Gossett "upon the completion of procedures which will be necessary to terminate [the QDRO] including, but not limited to any legal proceedings which may be required to effect said termination," and an offset of $2,900.00 in satisfaction of a loan from Mr. Gossett to Ms. Gossett. Mot. Summ. J. Ex. F at 2, ECF No. 58. In exchange, Ms. Gossett agreed to "sign any and all documents when submitted to her which will effectively terminate the Qualified Domestic Relations Order presently on file with the International Brotherhood of Painters and Allied Trades, including but not limited to any documents which may be required as a part of any legal proceedings to terminate the said Qualified Domestic Relations

---

[4] Based on the Fund's estimates provided in this case, the total value of the pension benefits earned by Mr. Gossett was approximately $100,000 when this case was filed. *See* Report Regarding Roger Gossett's Pension, ECF No. 25. Neither party has adduced any evidence of the value of the pension benefits in 2011, when Ms. Gossett sold her share to Mr. Gossett, but as the party asserting the affirmative defense of fraud, it is Ms. Gossett's burden to adduce evidence supporting her claim that Mr. Gossett misrepresented the value of the pension benefits. This is another fatal flaw in Ms. Gossett's opposition to Mr. Gossett's summary judgment motion.

Order." *Id.*

On January 30, 2012, the Fund's attorney sent a letter to Mr. Gossett's then-attorney, stating that while Ms. Gossett could waive her interest in the Fund, the Fund could still be required to pay her share if (1) the QDRO was considered a plan instrument and (2) the QDRO could not be rescinded. First Am. Compl. ¶ 11, ECF No. 23; *see also id*. Ex. 4. The pension plan was later amended to permit waiver of rights under a QDRO. *Id.* ¶ 12. In response to a request from Mr. Gossett's attorney, the Fund sent her a waiver form on March 7, 2017, which Ms. Gossett could sign to terminate the QDRO and release her interest in the Fund. *Id.* ¶ 13. Ms. Gossett refused to sign the waiver and, in a letter to Mr. Gossett's attorney, stated "I will not sign the document you sent for Roger Gossett to receive his benefits from The Chicago Painters and Decorators Pension Fund; nor am I waiving my right to receive my share from the pension fund." Mot. Summ. J. Ex. G, ECF No. 58. The Fund received a copy of Ms. Gossett's letter from Mr. Gossett's attorney on April 6, 2017. First Am. Compl. ¶ 14, ECF No. 23.

Based on this dispute, the Fund initiated this interpleader action, seeking a declaration as to whom the disputed share of the Fund benefits should be paid.[5] Mr. Gossett cross-claimed against Ms. Gossett for breach of contract in failing to terminate her interest in the Fund and moved for summary judgment.

## **Discussion**

Marital settlement agreements are contracts and, therefore, the rules governing contracts apply. *See In re Marriage of Murphy*, 359 Ill. App. 3d 289, 300, 834 N.E.2d 56, 66 (2005). The elements for a breach of contract claim are (1) the existence of a valid and enforceable contract;

---

[5] Mr. Gossett has begun receiving his undisputed 50 percent share of the pension benefits. ECF No. 30.

(2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). A valid contract "must incorporate an offer, acceptance and valuable consideration to be enforceable, and the terms must be sufficiently definite." *Zimmerman Props., Inc. v. Grund*, No. 03-CV-3359, 2007 WL 433533, at *4 (N.D. Ill. Feb. 2, 2007). The "terms of the marital settlement are binding on the parties and the court," *Blum v. Koster,* 235 Ill. 2d 21, 32, 919 N.E.2d 333, 340 (2009), and if "the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence," *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999).

Here, the parties entered into a valid contract. Ms. Gossett agreed to waive her interest in the Fund for $10,000 in valuable consideration, and the terms specify that she agreed to sign any and all documents necessary to terminate the QDRO. Ms. Gossett evinced her intent to waive her interest in two separate signed writings, one of which was notarized. *See* Mot. Summ. J. Exs. D & F, ECF No. 58. It is undisputed that Mr. Gossett paid the $10,000, RGSOF ¶ 17, in part to Ms. Gossett herself and in part to cover debts owed, *see* Mot. Summ. J. Ex. F at 2, ECF No. 58. Mr. Gossett has alleged injury as a result of Ms. Gossett's failure to waive her interest in the Fund. Mem. Supp. Mot. Summ. J. at 3, 7, ECF No. 58-1. By refusing to sign the waiver of her rights provided by the Fund, in direct contravention of the terms of the agreement, Ms. Gossett has breached the agreement.

Ms. Gossett does not dispute that she agreed to sell her share of the pension benefits to Mr. Gossett for $10,000, or that she received that payment.[6] She maintains that she was fraudulently

---

[6] Although she claims that the contract was procured by fraud, it bears noting that Ms. Gossett has never sought to rescind the contract—presumably because doing so might require her to return the $10,000 payment to Mr. Gossett. As the Seventh Circuit has explained, generally

induced to enter into that agreement, but she has not adduced any facts to support such a defense. She has neither provided a sworn statement as to what Roger Gossett said to her regarding the value of the benefits nor contested Mr. Gossett's properly supported statement that, in 2011, when she sold her share of the benefits to Mr. Gossett, she had been receiving copies of Fund statements for some five years. That failure alone suffices to warrant entry of judgment in favor of Mr. Gossett; even if he represented that the pension benefits might have no value, as Ms. Gossett claims, she could not reasonably rely on that representation in light of Fund statements that reflected otherwise. To state a fraudulent inducement claim, Ms. Gossett would have to allege that (1) Mr. Gossett made a false statement of material fact; (2) he knew the statement was false; (3) the statement was intended to induce her reliance; (4) she reasonably relied on that statement; and (5) the statement caused her damage. *See, e.g.*, *Chi. Printing Co. v. Heidelberg USA, Inc.*, No. 01-CV-3251, 2001 WL 1134862, at *4 (N.D. Ill. Sept. 25, 2001). Reliance is reasonable when all of the material facts are "exclusively within the knowledge of" one party and the other has "no means of independently ascertaining the truth." *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1415 (7th Cir. 1986). A party purporting to rely on another's representation "cannot ignore what his own investigation has revealed and later claim that he was defrauded by the actions of the other party." *Id.* Here, it would be unreasonable for Ms. Gossett to rely on Mr. Gossett's oral misrepresentations

---

under common law, "a party bringing an action for fraud in the inducement must elect between two remedies. One alternative is to affirm the contract, retain the benefits, and seek damages. The other alternative is to rescind the contract, return any benefits received, and be returned to the status quo. If a party elects to rescind the contract, the trial court must adjust the equities and attempt to return the parties to the status quo. This usually necessitates not just a rescission of the contract, but also a return of money or other things received or paid under the contract, plus reimbursement as special damages, for any reasonable expenditures incurred as a proximate result of the fraudulent conduct." *Lochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 678 (7th Cir. 2007) (internal punctuation omitted). Here, Ms. Gossett is asserting a defense, rather than a claim, but the distinction does not seem relevant to the equities; Ms. Gossett seems to want both to have her cake and eat it too.

9

when she was in possession of contradictory documentary evidence from the Fund. Ms. Gossett offers no explanation as to why her reliance on Roger Gossett's representations about the lack of value of the pension benefits was reasonable given her repeated assertions that he had cheated her by concealing assets during their divorce proceedings and her right, as a participant in the Plan by virtue of the QDRO, to obtain a statement about the value of her share of the pension benefits from the Fund (even if she was not already receiving Fund statements).[7]

Further, Ms. Gossett does not contest Mr. Gossett's claims that she was the party who initiated the discussion about selling her share of the pension plan or that she first asked for $20,000 for the pension benefits. These uncontested facts belie any claim by Ms. Gossett that she relied on Roger Gossett's representation regarding the value of the pension fund benefits. That Ms. Gossett first proposed to sell the benefits for $20,000 makes plain that she understood, at that point, that the benefits must have been worth at least that much. Courts have taken negotiations for marital agreements as an indication that the agreement was not a product of coercion or duress, s*ee, e.g.*, *In re Marriage of Murphy*, 359 Ill. App. 3d at 294, 834 N.E.2d at 61, and the uncontested facts indicate that Mr. Gossett and Ms. Gossett negotiated the terms of the agreement after she approached him asking for a loan in 2011. In the absence of "fraud, coercion or misrepresentation, where the parties have entered into a property settlement agreement wherein each has waived any and all interests in and to the retirement plan(s) of the other party, the parties are bound to the terms of their agreement." *In re Marriage of McLauchlan*, 2012 IL App (1st) 102114, ¶ 29, 966 N.E.2d 1151, 1160.

What emerges from the evidence in this case is that Ms. Gossett needed money in 2011.

---

[7] It bears noting that Ms. Gossett never explains how it is that she knew in 2017 that the pension benefits were worth much more than $10,000 when she purportedly had no knowledge of their worth in 2011, when she struck the deal with her former husband.

With an asset in the form of pension benefits that were not yet payable, Ms. Gossett pursued a deal with her former husband to sell those future pension benefits back to him. He would not pay what she proposed; she took what she could get—an amount that was significantly less than the benefits would ultimately be worth. And while the Court understands that Ms. Gossett believes that Mr. Gossett has treated her unfairly in the marriage, their divorce, and their negotiations over this deal, that is not a basis to invalidate the deal. None of the evidence of record supports her claim that Mr. Gossett defrauded her in this transaction. Given the existence of a valid contract in which Ms. Gossett agreed to "sign any and all documents when submitted to her which will effectively terminate the Qualified Domestic Relations Order presently on file with the International Brotherhood of Painters and Allied Trades," Ms. Gossett's refusal to sign the waiver provided by the Fund to Mr. Gossett's attorney in 2017 constitutes a breach of that contract. The Court therefore grants Mr. Gossett's motion for summary judgment on his cross-claim. The Court will enter a Judgment Order declaring that Mr. Gossett is the lawful recipient of 100 percent of the Fund benefits earned in his name and that Ms. Gossett is not entitled to any payment of benefits from the Fund.

Date: September 24, 2019

John J. Tharp, Jr.
United States District Judge